

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JASON CROSS and** | § | Case No. 21-41433 |
| **BRANDY CROSS** | § | |
| | § | |
| Debtors | § | Chapter 7 |
| | § | |

| | | |
|---|---|---|
| SMGB, LLC | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 22-04017 |
| | § | |
| JASON CROSS | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION</u>

On this date the Court considered the "Motion for Summary Judgment
and Brief in Support" (the "Motion") filed by SMGB, LLC (the "Plaintiff") on
January 31, 2022, and the respective objections, replies, and other related
filings.  Plaintiff seeks to except from discharge alleged debts owed by Jason
Cross (the "Defendant") pursuant to 11 U.S.C. § 523(a)(2)(A) and (B).
Plaintiff also asks the Court to draw an adverse inference against Defendant,
and moves the Court to strike his evidentiary affidavit, because Defendant

asserted his Fifth Amendment privilege while being deposed.  After

consideration of the pleadings, proper summary judgment evidence, and the

relevant legal authorities, the Court concludes that no genuine issues of

material fact remain.  For the reasons explained in this memorandum,

Plaintiff's Motion is GRANTED IN PART and Defendant's affidavit is

stricken.

## I.  Jurisdiction

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334

and 157.  The Court has the authority to enter a final judgment in this

adversary proceeding because it constitutes a statutorily core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (I), and meets all constitutional

standards for the proper exercise of full judicial power by this Court.

## II.  Facts and Procedure

Defendant was the CEO and 68% owner of a company named Isotex.[1]

On April 19, 2019, Plaintiff loaned Isotex $3,000,000 dollars.[2]  Defendant

personally guaranteed this obligation.[3]  In August 2019, Plaintiff made a

---

[1] Pl. Mot. Summ. J., ECF No. 13 at 2.

[2] *Id.*

[3] *Id.* at Exhibit A ¶ 8.

second loan to Defendant of $3,050,000 dollars.[4]  Plaintiff received a

cumulative 5% equity interest in Isotex as consideration for the loans.[5]

Plaintiff has alleged that Defendant made false misrepresentations to

induce it into making these loans.[6]  These misrepresentations were:

i. That Isotex had Letters of Intent representing "$5.4 billion in potential sales";[7]

ii. That Isotex had "current purchase orders that now total $5.2 billion";[8]

iii. That Isotex had "developed, in conjunction with some farms in Oregon, genetics for a special seed. This seed is called BOAX Seed";[9]

iv. That "ISOTEX has contracted 6 farmers across the state of Montana to farm over 50,000 acres of industrial hemp";[10]

v. That "lsotex has been working with Costa Rica, Jamaica, Puerto Rico, Oregon, Washington, Oklahoma, Arkansas, Kentucky, Florida, Louisiana, and Texas to be able to grow 100's of thousands of acres of industrial hemp by putting together COOPs and working to improve the poverty levels in those countries/States";[11] and

---

[4] *Id.* at Exhibit A ¶ 9.

[5] *Id.* at Exhibit A ¶ 10.

[6] *Id.* at 3.

[7] *Id.* at Exhibit B 10:3-13.

[8] *Id.* at Exhibit B 10:20-21:3.

[9] *Id.* at Exhibit B 11:16-12:24.

[10] *Id.* at Exhibit B 12:18-13:1.

[11] *Id.* at Exhibit B 13:9-20.

vi. That Isotex had experience in the hemp industry.[12]

Plaintiff additionally claims Defendant lied that Isotex had insurance, and that Defendant provided misleading budgets to create false projections.[13] Defendant is further accused of misrepresenting how the loan funds would be used.[14] Plaintiff also states that, when making the guarantee, Defendant claimed he was associated with entities owning several pieces of real estate that would be used to "assure repayment of the principal balance to the borrowing entity."[15] Plaintiff seeks a nondischargeable judgment against Defendant in the amount of $7,711,736.99.[16]

Defendant filed his bankruptcy petition October 8, 2021.[17] Plaintiff filed this adversary proceeding against Defendant on March 7, 2022.[18] Defendant answered the complaint on April 5, 2021.[19] On December 2, 2022,

---

[12] *Id.* at Exhibit D.

[13] *Id.* at Exhibit D.

[14] *Id.* at Exhibit B 26:20-23.

[15] *Id.* at Exhibit D; Exhibit B at 15:14-17:25.  The properties in question are: (i) 14208 Hughes Ln, Dallas, TX 75254, (ii) 4128 Tomberra Way, Dallas, TX 75220, (iii) 11618 Valleydale Rd, Dallas, TX 75230, (iv) 163 Cambridge Dr, Pottboro, TX 75076, (v) 5972 Hastings Rd, Clinton, WA 98236, (vi) 6452 Hunziker Ln, Clinton, WA 98236, and (vii) 8630 St Rt. 625., Clinton, WA 98236.

[16] *Id.* at 4.

[17] Bankr. Pet., Case No. 20-42002, ECF No. 1.

[18] Pl. Compl., ECF No. 1.

[19] Def. Ans., ECF No. 5.

Plaintiff deposed Defendant.[20]  During that deposition, Defendant asserted

his Fifth Amendment privilege in response to numerous questions.[21]

Thereafter, Plaintiff filed its summary judgment motion on January 31,

2023.[22]  Defendant timely objected to Plaintiff's summary judgment motion. [23]

　　　　In support of his objection to the Motion, Defendant included an

affidavit signed by him disputing many of Plaintiff's proffered facts.[24]  Many

of the facts disputed answer questions posed at Defendant's deposition to

which he asserted his Fifth Amendment privilege.  No other pleading has

been previously been filed by Defendant withdrawing or seeking to withdraw

his assertion of his Fifth Amendment privilege.  At the time the Motion was

filed, the deadline for discovery had expired.  Plaintiff moved to strike this

affidavit and objected to any attempted withdrawal of Defendant's Fifth

Amendment privilege on March 3, 2023.[25]  Plaintiff's motion to strike was

---

[20] Pl. Mot. Summ. J., ECF No. 13 at Exhibit B.

[21] *Id.*

[22] Pl. Mot. Summ. J., ECF No. 13.

[23] Def. Resp., ECF No. 14.

[24] *Id.* at Exhibit A.

[25] Pl. Mot. to Strike Aff., ECF No. 16.

amended on March 16, 2023.[26]  Defendant objected to Plaintiff's motion to strike on March 30, 2023.[27]

### III.  Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catlett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)).  Thus, if summary judgment is appropriate, the Court may resolve the case as a matter of law.

The moving party always bears the initial responsibility of informing the court of the basis for its motion and producing evidence which it believes demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  How the necessary summary judgment showing can be made depends upon which party will bear the burden of proof at trial.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077 n.16 (5th Cir. 1994).  "A fact is material only if its resolution would affect the outcome of the action."  *Wiley v. State Farm Fire and Cas, Co.*, 585 F.3d 206, 210 (5th Cir. 2009).  "All reasonable inferences must be

---

[26] Pl. Amend. Mot. to Strike Aff., ECF No. 17.

[27] Def. Obj., ECF No. 20.

6

viewed in the light most favorable" to the nonmoving party, and "any doubt must resolved in favor of the nonmoving party." *In re Louisiana Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). An actual controversy of fact exists where both parties have submitted evidence of contradictory facts. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

Courts may accept the moving party's version of the facts as undisputed. *Alvarez v. United Parcel Serv. Co.*, 398 F. Supp. 2d 543, 548-49 (N.D. Tex. 2005) (overruled on other grounds); cf. *F.D.I.C. v. Foxwood Mgmt. Co., No.* 92-2434, 1994 WL 24911, at *6 (5th Cir. Jan. 14, 1994) (citing cases for the proposition that courts can accept the contents of a conclusory affidavit as true if they are unchallenged). This comports with the notion that courts need not hunt through the record searching for a genuine issue of material fact. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Savers Fed. Savs. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989). Once the movant has met its burden, the nonmovant may not rest upon allegations in the pleadings and still survive summary judgment. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). The Court does not, "in the absence of any proof, assume that the nonmoving party could or

would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888

(1990)).

## IV. Fifth Amendment Privilege

The Court will first address the evidence issue raised by Plaintiff in its

motion to strike regarding Defendant's affidavit and prior exercise of his Fifth

Amendment privilege.  Plaintiff argues: (1) the Court should draw an adverse

inference against Defendant due to his refusal to answer any substantive

questions during his deposition; and (2) the Court should strike the affidavit

Defendant submitted in support of his objection to the Motion.  After review

of applicable authority, the Court will draw an adverse inference against

Defendant and strikes his affidavit.

Defendant asserted his Fifth Amendment privilege to avoid answering

many substantive questions at his deposition.  He refused to answer relevant

questions such as:

• **"Mr. Cross, isn't it true that your representation in this exhibit, that
  Isotex had letters of intent representing '$5.4 billion in potential sales,'
  was false when made?**[28]

· "Mr. Cross, isn't it true that you knew at the time that the
  representation was made -- so at the time you made that
  representation, isn't it true that you knew it was false that Isotex had

---

[28] Def. Obj., ECF No. 14, Exhibit B at 4.

$5.4 billion in potential sales?"[29]

- "Isn't it true that you made that misrepresentation with fraudulent intent?"[30]

- "Isn't it true that you made the misrepresentation with the intent that SMGB rely on it?"[31]

- "There's another representation in this document, that Isotex had current purchase orders -- I'm going to quote -- 'current purchase orders that now total $5.2 billion.' Isn't it true that that representation was falsely made?"[32]

- "Isn't it true that Isotex has no ownership of, control over, or financial interest in the performance or sales of BOAX seeds?"[33]

- "'Isotex has contracted farmers across the state of Montana to farm over 50,000 acres of industrial hemp.' Isn't it true that that representation was false when made?"[34]

- "Isn't it true that Isotex holds no patents?"[35]

- "Isotex had 'developed, in conjunction with some farms in Oregon, genetics for a special seed.' Isn't it true that that representation is

--------------------------------

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 5.

false?"[36]

- "Isn't it true that your representation . . . that you were 'associated with entities that had an ownership in 14208 Hughes Lane, 4128 Tomberra Way, 11618 Valleydale Road, 163 Cambridge Drive, 5972 Hastings Road, 19 6452 Hunziker Lane, and 8630 State Route 625' was false when made?"[37]

- *"*Isn't it true that you have no ownership interest in any of these properties?"[38]

- "And isn't it true that at the time you signed this document, you had no intention of repaying the debt that was being loaned?"[39]

- "Isn't it true that at the time Isotex borrowed these funds, you personally had no intention of deploying them for the purpose of growing the business."[40]

- "At the time you signed this guaranty, which was in April of 2019, did you at the time intend to repay SMGB?"[41]

Defendant's summary judgment response did not state he was withdrawing

the assertion of his Fifth Amendment privilege.[42]

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 7.

[40] *Id.*

[41] *Id.* at 8.

[42] *Id.*

Defendant first argued his affidavit was intended as a withdrawal of the privilege when responding to Plaintiff's subsequent motion to strike.[43] The affidavit answers some of the questions Defendant avoided answering during discovery due to his privilege assertion. However, it does not respond to all questions but instead contains general statements. For example, Defendant claims in his affidavit that:

- "I never intended to mislead SMGB or any other investors."[44]

- "All representations contained in the Executive Summary were true. Isotex did have Letters of Intent, Isotex did agreements with growers, isotex did have Supply Contracts, Isotex did have BOAX seed and Isotex did believe it would be able to generate large quantities of industrial hemp."[45]

Defendant did not introduce as controverting evidence any of the documents his affidavit claims exist.

It is well settled that in most circumstances a party may invoke and withdraw their Fifth Amendment privilege during a civil proceeding. The

---

[43] Specifically, Defendant, through counsel, stated: "Defendant does not dispute that during the deposition in this matter the Defendant asserted his Fifth Amendment privilege. Nor does the Defendant dispute that in response to the Motion for Summary Judgment he set forth a Declaration which contradicted the prior Fifth Amendment assertion. The Defendant would show that his Declaration is support of his Response to Motion for Summary Judgment amounts to a withdrawal of his Fifth Amendment privilege." Def. Obj. to Am. Mot. to Strike, ¶ 2-3, 2, ECF No. 20.

[44] Def. Obj., ECF No. 14 at 9.

[45] *Id.* at 8.

Supreme Court has cautioned that the Constitution limits "the imposition of
any sanction which makes assertion of the Fifth Amendment privilege
'costly.'" *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012);
*Spevack v. Klein*, 385 U.S. 511, 515 (1967). When there are competing
interests posed by an invocation of the Fifth Amendment, a court should
measure "the relative weights of the parties' competing interests with a view
toward accommodating those interests, if possible." *Wehling v. Columbia
Broad. Sys.*, 608 F.2d 1084, 1088 (5th Cir. 1979).

Generally, "[t]he court should be especially inclined to permit
withdrawal of the privilege if there are no grounds for believing that opposing
parties suffered undue prejudice from the litigant's later-regretted decision to
invoke the Fifth Amendment." *United States v. Certain Real Prop. &
Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 84 (2d
Cir. 1995). However, withdrawal is not permitted if the litigant is trying to
"abuse, manipulate or gain an unfair strategic advantage over opposing
parties." *Id.* The timing and circumstances of the withdrawal are relevant
factors in determining whether there has been an attempt to abuse the
privilege or gain some unfair advantage. *Davis Lynch,* 667 F.3d at 547.

A litigant is usually not allowed to withdraw the privilege if it is
invoked throughout discovery and then withdrawn at the final hour to

support or defend against a motion for summary judgment.[46]  When denying

an attempt to withdraw under these circumstances, the "Circuit Courts

indicated concern that the litigant appeared to be using the privilege to gain

an unfair advantage." *Id.* at 548.  Withdrawing the privilege late in a case

unfairly prejudices the opposing party because of increased costs, delays, and

the need for new discovery.[47]  Conversely, a litigant may withdraw its

privilege if circumstances indicate that "(1) the litigant was not using the

privilege in a tactical, abusive manner, and (2) the opposing party would not

experience undue prejudice as a result." *Id.*

    The circumstances of this case are such that Defendant should not be

permitted to withdraw his privilege.  Defendant has wielded the privilege,

whether intentional or not, in a manner resulting in  aan unfair litigation

advantage.  Defendant waited until after the close of discovery and the filing

---

[46] *United States v. Certain Real Prop. and Premises Known as: 4003–4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 85 (2d Cir. 1995) (affirming district court's holding that defendant who asserted their Fifth Amendment privilege throughout discovery could not withdraw the privilege and respond to a motion for summary judgment); *Edmond v. Consumer Prot. Div.*, 934 F.2d 1304, 1308–09 (4th Cir. 1991) (affirming district court's striking of summary judgment affidavit offered in support of summary a judgment motion when movant had invoked their Fifth Amendment privilege during discovery deposition); *United States v. Parcels of Land*, 903 F.2d 36, 44–45 (1st Cir. 1990) (affirming decision of district court to strike an affidavit offered in opposition to a motion for summary judgment when nonmovant invoked their Fifth Amendment privilege at their deposition).

[47] *Certain Real Prop.*, 55 F.3d at 86; *see also SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994) (describing disadvantages when a party withdraws previous assertion of Fifth Amendment privilege on the eve of trial.)

of a summary judgment motion to attempt to withdraw the privilege.

Further, the time for discovery has expired, Plaintiff has not fully examined

Defendant, and cannot do so absent reopening discovery.

Permitting withdrawal of the privilege and admission of Defendant's

affidavit would result in undue prejudice to Plaintiff.  In part, this is because

discovery has closed without a rescheduled deposition.[48]  However, neither

Defendant's pleadings nor the evidence before the Court give any indication

Defendant is willing to submit to further discovery.[49]  Reopening discovery

could address some of the prejudice to Plaintiff by allowing Defendant's

deposition to be retaken and an amended summary judgment motion to be

filed.  However, reopening discovery would surely increase Plaintiff's legal

costs and delay resolution of this case.  Such a solution, under the

---

[48] *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 548-49 (5th Cir. 2012) (Withdrawal of privilege only minimally prejudiced nonmovant when the privilege was withdrawn several weeks before the close of discovery, allowing another deposition to be schedule and all possible testimony to be available in the litigation.)

[49] In considering whether a defendant should be permitted to testify at an "upcoming" trial despite prior assertion of Fifth Amendment privilege, another court in this district permitted such testimony but only after the defendant in question submitted "to a deposition by Plaintiffs prior to the scheduled trial date at a date and time convenient to counsel for Plaintiffs, and that Anderton [defendant] should bear the cost of the deposition." *Mendoza v. A&A Landscape & Irrigation*, No. 4:12-CV-562, 2014 U.S. Dist. LEXIS 205327, at *5-6 (E.D. Tex. 2014).  In *Mendoza*, the defendant did not "allow[] a large amount of time to lapse, and provided counsel for Plaintiffs with notice of Anderton's [defendant's] intent to testify as soon as he made that determination."  *Id.* at *5.

14

circumstances, is unacceptable.[50]  Consequently, because permitting

Defendant to withdraw the privilege would be abusive and unduly prejudice

Plaintiff, the privilege may not be withdrawn and Defendant's affidavit will

be stricken.

The Court must also consider, due to Defendant's intact privilege,

whether and to what extent an adverse inference should be drawn.  Plaintiff

argues that Defendant's assertion of his Fifth Amendment privilege warrants

making an adverse inference.  Defendant is opposed.

It is well settled that an adverse inference may be drawn in a civil case

when a party asserts his Fifth Amendment privilege.  *See Baxter v.

Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not

forbid adverse inferences against parties to civil actions when they refuse to

testify in response to probative evidence offered against them");  *In re Enron

Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 1017 (S.D. Tex.

2010);  *United States ex rel. Gonzalez v. Fresenius Med. Care N.A.*, 571 F.

Supp. 2d 758, 764 (W.D. Tex. 2008) ("[I]t is not unconstitutional to force civil

---

[50] This is not to say reopening discovery after withdrawal of the Fifth Amendment privilege is in all cases impermissible.  If a movant seeks withdrawal earlier during discovery, or recommends reasonable accommodations to alleviate prejudice if necessary, the result may well be different.  Not all prejudice is *undue*, such as the circumstances in *Mendoza*. However, in this proceeding, Defendant waited until responding to a summary judgment motion, gave no prior notice to Plaintiff's counsel of his intent to give testimony, and made no offer or attempt at accommodation.

defendants to choose between the negative inference drawn from their silence in a civil case and their Fifth Amendment privilege. ") (quoting *United States ex rel. Shank v. Lewis Enters., Inc.*, No. 04–CV–4105–JPG, 2006 WL 1064072, at \*4 (S.D. Ill. Apr. 21, 2006)).

The Fifth Circuit has "limited the value of the negative inference by recognizing that a party seeking summary judgment cannot rely solely on the other party's exercise of his fifth amendment rights." *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 n. 3 (5th Cir. 1990), citing *United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979) ("[A] grant of summary judgment merely because of the invocation of the fifth amendment would unduly penalize the employment of the privilege."). The Court finds Defendant may not withdraw his privilege, it remains intact, and the Court will draw an adverse inference against Defendant where and when appropriate. Any adverse inference drawn, however, may not be the sole evidentiary basis for granting Plaintiff's Motion.

## V. Dischargeability

Plaintiff alleges the debts owed by Defendant should be determined nondischargeable under 11 U.S.C. § 523(a)(2)(A) because its loans were obtained through false pretenses or actual fraud.[51] The Fifth Circuit has

---

[51] 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code provides that:

distinguished the elements of "actual fraud" and of "false pretenses and false

representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir.

1995). The distinction recognized by the Fifth Circuit depends upon whether

a debtor's representation is made with reference to a future event, as opposed

to a representation regarding a past or existing fact. *Id.*; *In Re Matter of*

*Bercier*, 934 F.2d 689, 692 (5th Cir. 1991) ("A debtor's promise . . . related to a

future action which does not purport to depict current or past fact . . .

therefore cannot be defined as a false representation or a false pretense").

In considering whether any genuine issue of material fact exists to

preclude entry of judgment, the Court notes that because Defendant largely

failed to controvert Plaintiff's admissible evidence, many facts are established

under the guidelines of Local District Court Rule CV-56 as incorporated by

Local Rule of Bankruptcy Procedure 7056(d).[52]

---

a discharge under §727 of this title does not discharge an individual debtor
from any debt for money, property, or services . . . to the extent obtained by
false pretenses, a false representation, or actual fraud, other than a
statement respecting the debtor's or an insider's financial condition.

[52] Local District Court Rule CV-56 directs a movant to include a Statement of Undisputed
Material Facts and to support such a statement with "appropriate citations to proper
summary judgment evidence." It directs a respondent to ensure that any response "should
be supported by appropriate citations to proper summary judgment evidence." With regard
to the disposition of the motion, the rule states:

(c) **Ruling**. In resolving the motion for summary judgment, the court will assume
that the facts as claimed and supported by admissible evidence by the moving party
are admitted to exist without controversy, except to the extent that such facts are
controverted in the response filed in opposition to the motion, as supported by

## A. 523(a)(2)(A): False Representation

Plaintiff first moves for summary judgment first under the false representation component of § 523(a)(2)(A).  In order for a debtor's representation to constitute a false pretense or a false representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party." *RecoverEdge L.P.*, 44 F.3d at 1293 *overruled on other grounds as recognized by In re Ritz*, 832 F.3d 560 (5th Cir. 2016).  For the third element under § 523(a)(2)(A), the creditor must prove an intent to deceive.  *Friendly Fin. Service - Eastgate v. Dorsey (In re Dorsey)*, 505 F.3d 395, 399 (5th Cir. 2007).  A court may infer the requisite intent from a "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005);  *see also In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994) (considering the totality of the circumstances to determine the debtor's intent).

---

proper summary judgment evidence.  The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact.

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to support such a challenge by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the movant "admitted to exist without controversy."  E.D. TEX. LOCAL R. CV–56(c).

Furthermore, Plaintiff must prove both actual reliance and justifiable

reliance.  Actual reliance is the equivalent of causation-in-fact, which is

defined as a "substantial factor in determining the course of conduct that

results in . . . loss." *AT & T Universal Card Services v. Mercer (In re Mercer)*,

246 F.3d 391, 403 (5th Cir. 2001) (emphasis removed).  This level of reliance

"requires little of the creditor." *Id.*  In the case of loan fraud, "an issuer

usually will be able to establish actual reliance by showing it would not have

approved the loan in the absence of debtor's promise."  *Id.* at 411.  Justifiable

reliance, described as "an intermediate level of reliance," is a subjective

standard that is more relaxed than the objective reasonable reliance

standard.  *Field v. Mans*, 516 U.S. 59, 74 (1995).  Reasonableness is still a

consideration however because "the greater the distance between the reliance

claimed and the limits of the reasonable, the greater the doubt about reliance

in fact." *Id.* at 76.  A promisee is not required to investigate even if an

investigation would reveal the falsity of the promisor's representation unless

the falsity is "readily apparent or obvious or there are 'red flags' indicating

such reliance is unwarranted."  *In re Hurst*, 337 B.R. 125, 133-34 (Bankr.

N.D. Tex. 2005).

Finally, the creditor must establish a loss sustained as the "proximate

result" or legal cause of the debtor's representation. *State of Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 967 (E.D. Tex. 1997). Proximate cause is "largely a question of foreseeability." *First Nat'l Bank of Omaha v. O'Brien (In re O'Brien)*, 555 B.R. 771, 782-783 (Bankr. D. Kan. 2016). Reliance on the debtor's representation is a proximate cause of the creditor's loss "if the evidence shows that the loss was a reasonably foreseeable consequence of the plaintiff's reliance." *Am. Tobacco Co.*, 14 F. Supp. 2d at 967.

Plaintiff alleges that Defendant made various misrepresentations concerning past or current events. These were that: (1) Defendant's company had 5.4 billion dollars worth of letters of intent to purchase hemp; (2) Defendant's company had current purchase orders worth 5.2 billion dollars; (3) Defendant's company had developed a special seed; (4) Defendant's company had contracts with farmers in place to grow the hemp; (5) Defendant misrepresented his company's relationship with different states and foreign nations; and (6) Defendant misrepresented his real estate holdings.[53]

Plaintiff's evidence to prove the falsity of these representations, Defendant's knowledge of said falsity, and Defendant's intent to deceive when making the representations consists in part of documentation attached to the

---

[53] Plaintiff states that this sixth misrepresentation only relates to the 523(a)(2)(B) claim, however the Court will address its veracity here. These misrepresentations are referred to in the Motion as the"False Representations." Pl. Mot. Summ. J., ¶ 18, 4, ECF No. 13.

Motion.  Plaintiff produced copies of an Executive Summary signed by Jason

Cross containing the false statements.[54]  Plaintiff also produced financial

information referencing purchase orders and a budget including line items for

various types of insurance.[55]  Plaintiff lsoprovided the Declaration of Greg M.

Walker outlining the various false representations made by Defendant and

Plaintiff's reliance on them.[56]  As additional support, Plaintiff asks the Court

to draw adverse inferences from Defendant's assertion of his Fifth

Amendment privilege at his deposition.  Specifically, Plaintiff identifies for

the Court questions which Defendant refused to answer, including the

following:

1. Questions regarding Defendant misrepresenting the existence of letters of

intent:

· "Mr. Cross, isn't it true that your representation in this exhibit, that
Isotex had letters of intent representing '$5.4 billion in potential sales,'
was false when made?"[57]

---

[54] For example:  "A few of the larger companies we have already been in talks with and in
which we have signed NDA's and their needs total more than our facility could handle and
over $100 billion in orders gives us a realistic idea of the market demand.  We also have
LOI's representing another $5.4 billion in potential sales to add the current purchase
orders that now total $5.2 billion."   Pl. Mot. Summ. J., ECF No. 13, Exhibit E at 2.

[55] Pl. Mot. Summ. J., ECF No. 13, Exhibits F and G.

[56] Pl. Mot. Summ. J., ECF No. 13, Exhibit D.

[57] Pl. Mot. Summ. J., ECF No. 13 Exhibit B at 10:3-6.

- "Mr. Cross, isn't it true that you knew at the time that the representation was made -- so at the time you made that representation, isn't it true that you knew it was false that Isotex had $5.4 billion in potential sales?"[58]

- "And isn't it true that you made that misrepresentation with fraudulent intent?"[59]

- "Isn't it true that you made the misrepresentation with the intent that SMGB rely on it?"[60]

2. Questions regarding Defendant misrepresenting the existence of current purchase orders:

- "There's another representation in this document, that Isotex had current purchase orders -- I'm going to quote -- 'current purchase orders that now total $5.2 billion.' Isn't it true that that representation was falsely made?"[61]

- "Isn't it true that at the time you made that representation, you knew it was false?"[62]

- "And isn't it true that you made that misrepresentation with fraudulent intent?"[63]

- "And isn't it true that you made that representation with the intent

---

[58] *Id.* at 10:8-12.

[59] *Id.* at 10:14-15.

[60] *Id.* at 10:17-18.

[61] *Id.* at 10:20-24.

[62] *Id.* at 11:1-2.

[63] *Id.* at 11:4-5.

that SMGB rely on it in advancing funds to Isotex?"[64]

3. Questions regarding Defendant misrepresenting the development of a special seed:

- "Isn't it true -- still we're on Exhibit 1. There's a representation in there -- and I'll quote it again.  It says that Isotex had 'developed, in conjunction with some farms in Oregon, genetics for a special seed.' Isn't it true that that representation is false?"[65]

- "Isn't it true that that representation was false when made?"[66]

- "Isn't it true that you knew, when the representation was made, that it was false?"[67]

- "Isn't it true that you made that misrepresentation with fraudulent intent?"[68]

- "Isn't it true that you made that misrepresentation with the intent that SMGB rely on it in advancing funds to Isotex?"[69]

4. Questions regarding Defendant misrepresenting the existence of contracts with farmers to grow hemp:

- "There's another representation in Exhibit 1 that . . . 'Isotex has contracted farmers across the state of Montana to farm over 50,000 acres of industrial hemp.' Isn't it true that that representation was false

---

[64] *Id.* at 11:7-9.

[65] *Id.* at 11:16-21.

[66] *Id.* at 11:23-24.

[67] *Id.* at 12:1-2.

[68] *Id.* at 12:4-5.

[69] *Id.* at 12:7-9.

when made?"[70]

- "Isn't it true that you knew at the time that that representation was made that it was false?"[71]

- "Isn't it true that you made that misrepresentation with fraudulent intent?"[72]

- "And isn't it true that you made the misrepresentation with the intent that SMGB rely on it in advancing funds to Isotex?"[73]

5. Questions regarding Defendant misrepresenting Isotex's relationship with several states and foreign nations:

- "There's another representation also in Exhibit 1 -- this is another quote –'Isotex has been working with Costa Rica, Jamaica, Puerto Rico, Oregon, Washington, Oklahoma, Arkansas, Kentucky, Florida, Louisiana, and Texas to be able to grow hundreds of thousands of acres of industrial hemp by putting together COOPS.' Can you tell me what a COOP is?"[74]

- "Isn't it true that that representation was false when made?"[75]

- "Isn't it true that you knew at the time that that representation was false?"[76]

---

[70] *Id.* at 12:15-22.

[71] *Id.* at 12:24-25.

[72] *Id.* at 13:2-3.

[73] *Id.* at 13:4-5.

[74] *Id.* at 13:9-16.

[75] *Id.* at 13:18-19.

[76] *Id.* at 13:21-22.

- "Isn't it true that you made that misrepresentation with fraudulent intent?"[77]

- "Isn't it true that you made that misrepresentation with the intent that SMGB rely on it in advancing funds to Isotex?"[78]

6. Questions regarding Defendant misrepresenting his real estate holdings:

- "Isn't it true that contemporaneously with each of those loans (the $3 million and the $3,050,000 loan), that in exchange for making such loans, SMGB received a 2.5 percent equity interest in Isotex?"[79]

- "Isn't it true that Isotex never provided SMGB with a private placement memorandum or any equivalent document?"[80]

- "Isn't it true that your representation -- I'm still on Exhibit 1 -- that your representation that you were 'associated with entities that had an ownership in 14208 Hughes Lane, 4128 Tomberra Way, 11618 Valleydale Road, 163 Cambridge Drive, 5972 Hastings Road, 6452 Hunziker Lane, and 8630 State Route 625' was false when made?"[81]

- "What I'm looking at here, which I'm going to label as Exhibit 2, it says 'Real Estate Owned (Excluding Primary Residence).' Do you see this document, Mr. Cross?"[82]

- "And I see a representation at the bottom, directly above the signature -- well, there is a table listing various addresses, ownership interest,

---

[77] *Id.* at 13:24-25.

[78] *Id.* at 14:2-4.

[79] *Id.* at 15:5-8.

[80] *Id.* at 15:10-12.

[81] *Id.* at 15:14-20.

[82] *Id.* at 16:5-8.

street addresses, and so forth. Then at the bottom of that table, it reads as follows . . . 'As the principals and owners of the above-mentioned companies and as the sole owners of ISOTEX Health, LLC, we guarantee the . . . [assets] listed above are the property of the entities associated with both Jason Cross and Eugene Elfrank. By providing this list of assets, we are assuring repayment of the principal balance to the borrowing entity.' Do you see that, Mr. Cross?"[83]

- "And this document is signed by both you and a Mr. Eugene Elfrank. Isn't that correct?"[84]

- "And the borrowing entity was Isotex, correct?"[85]

- "Okay. Isn't it true that you have no ownership interest in any of these properties?"[86]

- "Okay. And isn't it true that at the time you made this misrepresentation, it was false?"[87]

- "Okay. And isn't it true that you made the false representations on what we're labeling as Exhibit 2, that you made those misrepresentations with fraudulent intent?"[88]

- "And isn't it true that you made those misrepresentations with the intent that SMGB rely on them?"[89]

---

[83] *Id.* at 16:10-23.

[84] *Id.* at  16:25-17:1.

[85] *Id.* at 17:3.

[86] *Id.* at 17:8-9.

[87] *Id.* at 17:11-12.

[88] *Id.* at 17:17-20.

[89] *Id.* at 17:22-24.

- "In fact, isn't it true that each of the misrepresentations we've been discussing to this point were made to induce SMGB to make the $3 million loan and the $3,050,000 loan?"[90]

After review of the uncontroverted evidence submitted by Plaintiff, and drawing adverse inferences against Defendant with respect to the questions set forth above, the Court finds there is no genuine issue of material fact that Plaintiff has demonstrated the falsity of the listed representations, Defendant's knowledge of their falsity, and Defendant's intent to deceive Plaintiff.

Plaintiff has also demonstrated that it justifiably and actually relied on these statements.  In the Declaration of Greg M. Walker, Plaintiff clearly avers its reliance on Defendant's statements.[91]  No facts or evidence have been brought to the Court's attention to dispute this actual reliance.  Plaintiff also declares its reliance was justified because the representations were believable in the context of the hemp business.[92]  With no controverting evidence, and considering Plaintiff's limited duty to investigate, the Court finds that no genuine issue exists that Plaintiff's reliance was justified.

---

[90] *Id.* at 18:1-4.

[91] Pl. Mot. Summ. J., Exhibit D at ¶ 23-26.

[92] *Id.* at ¶ 26.

Finally, there is no genuine issue that Defendant's actions were the proximate cause of Plaintiff's loss.  It is not disputed that Plaintiff made the loans in question and that the loans were guaranteed by Defendant.[93]  Nor is it disputed that Plaintiff has never received any loan payments.[94]  The resulting loss Plaintiff suffered was the foreseeable result of making the loans in reliance on Defendant's misrepresentations.

Therefore, the Court finds that no genuine issues of material fact exist in regard to Plaintiff's 523(a)(2)(A) false representation claim and that summary judgment should be granted on that claim finding debts in the amount of the two unpaid loans nondischargeable.

### B. 523(a)(2)(B): Materially False Statement

Plaintiff also moves for summary judgment under § 523(a)(2)(B) alleging that the "False Representations"[95] referenced in the Motion and contained in the Executive Summary,[96] as well as the representation in the guaranty executed by Defendant,[97] were materially false statements.[98]  A debt

---

[93] Pl. Mot. Summ. J., Exhibits H, I, K, and L.

[94] Pl. Mot. Summ. J., Exhibit D at ¶ 27.

[95] Pl. Mot. Summ. J., ¶ 18, 4, ECF No. 13.

[96] Pl. Mot. Summ. J., Exhibit E.

[97] Pl. Mot. Summ. J., Exhibit K.

[98] Pl. Mot. Summ. J.,¶ 17, 4, ECF No. 13; *Id*. at ¶ 44, 11.

is excepted from discharge under § 523(a)(2)(B) if Plaintiff demonstrates: (1) that the debtor made a written representation regarding his or an insider's financial condition; (2) that the written representation regarding his financial condition was materially false; (3) that the creditor reasonably relied upon the written representation; and (4) that the written representation was published or caused to be made by the debtor with the intent of deceiving the creditor. 11 U.S.C. § 523(a)(2)(B). Determining the existence of these elements is a question of fact a creditor must prove by a preponderance of the evidence. *Matter of Norris*, 70 F.3d 27, 29 (5th Cir. 1995). The defense offered by Defendant is that the Executive Summary did not concern the Debtor's financial condition.

A statement respecting the debtor's or an insider's financial condition must be in writing to meet the requirement of § 523(a)(2)(B). *In re Sharpe*, 351 B.R. 409, 422 (Bankr. N.D. Tex. 2006). The writing must have been written, signed, or adopted and used by the debtor. *In re Batie*, 995 F.2d 85 (6th Cir. 1993); *Engler v. Van Steinburg*, 744 F.2d 1060 (4th Cir. 1984). Defendant is an individual, and Isotex a corporation of which Debtor was both CEO and 68% owner.[99] Under the applicable definition, Isotex is an insider of Debtor and so a written statement as to the financial condition of Isotex

---

[99] Pl. Mot. Summ. J., ECF No. 13 at 2.

satisfies the writing requirement of § 523(a)(2)(B).[100]  The Executive

Summary and guaranty were both signed by Defendant and it is not

genuinely disputed that both were sent by Defendant to Plaintiff.[101]  Both are

therefore written statements satisfying the writing requirement of §

523(a)(2)(B).

Plaintiff must also show that these statements were materially false.  A

statement merely being untrue or inaccurate is not enough for it to be

materially false.  *In re DeJulio*, 322 B.R. 456 (Bankr. M.D. Fla. 2005),

judgment entered, (Jan. 11, 2005) (mere inaccuracy is not sufficient to show

material falsity, but a significant exaggeration of assets is sufficient).  A

statement is "materially false if it paints a substantially untruthful picture of

the defendant's financial condition by misrepresenting information of the type

that would normally affect a plaintiff's decision to grant credit."  *In re Koep*,

334 B.R. 364 (Bankr. D. Md. 2005).  The size of the discrepancy is a key factor

when determining if a statement is substantially inaccurate.  *Enterprise*

*National Bank of Atlanta v. Jones (In re Jones)*, 197 B.R. 949, 960 (Bankr.

M.D. Ga. 1996) ("Materiality is determined in part by the size of the

---

[100] 11 U.S.C. § 101(31)(A) states that with respect to an individual debtor, the term "insider" includes a "(i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer, or person in control."

[101] Pl. Mot. Summ. J., ECF No. 13, Exhibit E at 6.

discrepancy").

The materially false statements at issue are the same representations discussed above.[102]  The Court has already found these statements were false, and now finds that falsity to be material.  The Executive Summary and guaranty were important factors in Plaintiff's decision to extend credit.[103] The strength of the Isotex business, and the assets available to satisfy Defendant's guaranty obligations, are obvious factors for Plaintiff to consider when assessing credit risk.  The Court finds there is no genuine issue that the Executive Summary and guaranty contained materially false statements.

These materially false written statements must have been reasonably relied upon by Plaintiff.  To satisfy this element, Plaintiff must have actually relied on the written statement, and that reliance must have been reasonable. *Field v. Mans*, 516 U.S. 59, 68 (1995).  Partial reliance on a written statement is sufficient to satisfy this element.  *In re Slonaker*, 269 B.R. 595, 606 (Bankr. N.D. Tex. 2001).  The reasonableness of a creditor's reliance is a factual determination that "should be judged in light of the totality of the circumstances."  *Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993).  "A

---

[102] *Supra* at 18-28.

[103] Pl. Mot. Summ. J., ECF No. 13, Exhibit D at 5.

31

creditor is not required to assume that a debtor is lying or misrepresenting facts" in its written statements. *In re Morrison*, 361 B.R. 107, 123 (Bankr. W.D. Tex. 2007), subsequently aff'd, 555 F.3d 473 (5th Cir. 2009). The Court has already found that Plaintiff reasonably relied on Defendant's representations.[104] Thus, the element of reliance is satisfied.

Finally, section 523(a)(2)(B)(iv) requires that the written statements were caused to be made or published by debtor with intent to deceive. Unless a debtor admits to having an intent to deceive, courts look at the totality of the circumstances to infer whether the statement was knowingly false. *In re Morrison*, 555 F.3d 473, 482 (5th Cir. 2009). This inference is made by examining whether the statements were made with a "[r]eckless disregard for the truth or falsity of [the] statement combined with the sheer magnitude of the resultant misrepresentation." *Id.* (quoting *In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994)). Courts may also consider other factors such as whether "debtor was intelligent and experienced in financial matters, and if there was a clear pattern of purposeful conduct." *In re Morrison*, 361 B.R. 107, 124 (Bankr. W.D. Tex. 2007), subsequently aff'd, 555 F.3d 473 (5th Cir. 2009). Additionally, a debtor's intent to deceive may be inferred from his use of a false financial statement to obtain credit. *Matter of Young*, 995 F.2d 547, 549

---

[104] *Supra* at 28.

(5th Cir. 1993). The Court has already found that Defendant knew the representations at issue were false, and that they were made with an intent to deceive.[105] Thus, the Court finds that the element of intent has been satisfied.

The Court must consider Defendant's argument that the Executive Summary did not constitute a financial statement about Debtor's financial condition. A financial statement as referenced in § 523(a)(2)(B) is far broader then a "typical balance sheet or a profit and loss statement." *Engler v. Van Steinburg*, 744 F.2d 1060 (4th Cir. 1984). The Supreme Court has stated:

> "a statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to and impact on aggregate financial condition, so a statement about a single asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not. Naturally, then, a statement about a single asset can be a 'statement respecting the debtor's financial condition.'"

*Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1761 (2018). The Executive Summary contains statements concerning several different assets and their amount, and clearly concerns Isotex's financial status. These statements include, for example:

---

[105] *Supra* at 27.

- "Current purchase orders . . . now total $5.2 billion."[106]

- "ISOTEX has a contract to purchase approximately 250,000,000 seeds with only 10% down until the harvest is processed."[107]

- "We already have our farming registration and we are already licensed to do this business in Montana."[108]

- "ISOTEX has "contracted 6 farmers across the state of Montana to farm 50,000 pounds of industrial hemp."[109]

The summary also describes in detail tax breaks and financial assistance

ISOTEX would allegedly be receiving from civil authorities stating:

> "We also will be receiving some assistance from the GSA with long term and short term programs. They are prepared to give us Capital Gains Abatement with 25% in 3 years, 50% in 5 years, and 100% in 10 years. They have also offered us 10 year Building, and property tax abatement. In addition to this the owner was asking 3.4 million dollars for the 9 acre, 110k sq. foot facility with everything we need in it which we couldn't find anything actually ready to get but this site. After multiple offers we were able to have the River Authority come in and make a deal for both the seller and us for a total of 2.25 million. Of which we would pay 2.1 million and the other 150k would be paid by the river authority of 150k and they will carry that note for 9 years at 0% interest. This means that we found a facility where the only

---

[106] Pl. Mot. Sum. J., Exhibit E at 1.

[107] *Id.*

[108] *Id.* at 4.

[109] *Id.* at 2.

thing that needs to be installed is the equipment and freezer."[113]

Furthermore, the summary describes a contract with a company for purchase of the excess biomass of Isotex.

> "we have put together a deal with a company that is making fiber board.  This is very similar to wafer board, or chip board, OSB, MDF, but this product is much better, can't mold, and does not rot.  It is much sturdier and much stronger.  We have worked a deal for them to buy every pound of our spent biomass every day as long as we can get a stake in their company."[114]

All of these examples are statements regarding the financial condition of an insider of Debtor.[115]  For this reason the Court does not find Defendant's argument availing, but instead finds that Plaintiff has carried its burden with respect to all elements of its section 523(a)(2)(B) claim for nondischargeability.

### C. 523(a)(2)(A): Actual Fraud

The Motion last moves for summary judgment against Defendant under the actual fraud component of § 523(a)(2)(A).  In doing so Plaintiff argues that "the Court may infer that the Defendant did not intend, at the time he caused

---

[113] *Id.*

[114] *Id.* at 4.

[115] *Supra* at 29-30.

Isotex to take the loans, to repay the loans."[116]  The inference Plaintiff asks

the Court to make is an adverse inference because of Defendant's assertion of

his Fifth Amendment privilege.[117]

Actual fraud under section 523(a)(2)(A), as opposed to false

representations or false pretenses, encompasses promises of future actions

"which, at the time they were made, [the debtor] had no intention of

fulfilling." *Texas Capital Bank, N.A. v. Womack* (*In re Womack*), No. 21-

50192-CAG, 2022 WL 2659412, at *11 (Bankr. W.D. Tex. July 8, 2022).  The

Fifth Circuit has stated that actual fraud may be proven by showing that: (1)

the debtor made a representation; (2) the debtor knew that the representation

was false at the time it was made; (3) the debtor made the representation

with the intent and purpose to deceive the creditor; (4) the creditor relied on

the representation; and (5) the creditor sustained a loss as the proximate

result of its reliance on the representation.  *Selenberg v. Bates (Matter of*

*Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017).

Intent to deceive may be inferred where a debtor makes a false

representation with the knowledge that the statement will induce the creditor

to act. *Manheim Auto. Fin. Servs., Inc. v. Hurst (In re Hurst)*, 337 B.R. 125,

---

[116] Pl. Mot. Summ. J., ¶ 50, 12, ECF No. 13.

[117] *Id.* at ¶ 49.

133 (Bankr. N.D. Tex. 2005). Therefore, when reviewing the "intent" element of this dischargeability exception, courts "consider whether the circumstances, as viewed in the aggregate, present a picture of deceptive conduct by the debtor, indicating an intent to deceive the creditor." *Id.* Additionally, the requisite intent to satisfy "actual fraud" may be inferred from the party's acts after the representation was made. *In re Rifai*, 604 B.R. 277, 307 (Bankr. S.D. Tex. 2019). Therefore, "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 356, 360 (2016).

Plaintiff alleges Defendant committed actual fraud by representing he intended to repay the loans made by Plaintiff. To prove these elements Plaintiff asks the Court to draw an adverse inference against Defendant. Specifically, Plaintiff points the Court to Defendant's refusal to answer the following questions at his deposition:

- "And do you agree with me that this SM & GB Investments, LLC, actually is the same as the Plaintiff in this case, SMGB, LLC?'

- "You do agree, of course, that SMGB did in fact, fund Isotex at least $3 million, correct?"

- "And isn't it true that at the time you – just looking at the bottom on page 3 of 3, I see Jason Cross and Eugene Elfrank as signers on this agreement. This is your signature, correct?"

- "And isn't it true that at the time you signed this document, you had no intention of repaying the debt that was being loaned?"[118]

- 'Isn't it true that at the time of entering into this Amended and Restated Promissory Note that Isotex – or that you had no intention of causing Isotex to repay this debt?"[119]

- "At the time you signed this guaranty, which was in April of 2019, did you at the time intend to repay SMGB?"

- "'If you intended to repay SMGB, from what funds were you intending to make that payment?'[120]

The Court carefully reviewed the summary judgment evidence submitted by Plaintiff in support of its § 523(a)(2)(A) contention, but did not find sufficient evidence other than the requested adverse inference to support Plaintiff's contention.  The Court does not find it appropriate, relying on Fifth Circuit precedent, to rely solely on Defendant's exercise of his Fifth Amendment privilege to justify a finding that no genuine issues of fact exist. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 n. 3 (5th Cir. 1990), citing *United States v. White*, 589 F.2d 1283, 1287 (5th Cir.1979).  To rule otherwise would unduly penalize Defendant for exercising his Fifth Amendment privilege.  For this reason, summary judgment on Plaintiff's

---

[118] Pl. Mot. Summ. J., ECF No. 13,  Exhibit B at 24:2-17.

[119] *Id.* at 25:20-14.

[120] *Id.* at 26:6-12.

§ 523(a)(2)(A) actual fraud claims cannot be granted.

## VI.  Conclusion

Plaintiff has carried its burden for a finding that no genuine issue of material fact exists that the loan balances due in the total amount of $7,711,736.99 should be determined nondischargeable under 11 U.S.C. § 523(a)(2)(A) for false representations and under 11 U.S.C. § 523(a)(2)(B) for materially false written statements on which Plaintiff reasonably relied. Defendant has failed to create a genuine issue of material fact or to produce admissible controverting evidence to preclude granting summary judgment. Plaintiff has not carried its burden to support a finding that no genuine issue of material fact exists that the same loan balances should be determined nondischargeable under 11 U.S.C. § 523(a)(2)(A) for actual fraud.  The Motion will be denied as to this cause of action.

For these reasons and based upon the Court's consideration of the pleadings, the summary judgment evidence submitted, and the relevant legal authorities, the Court concludes that the "Motion for Summary Judgment" filed by Plaintiff should be GRANTED IN PART and DENIED IN PART. Orders consistent with this memorandum will be entered by the Court.

Signed on 08/25/2023

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE